IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRIAN SIATKOWSKI,** | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | * | Civil No. SAG-25-00313 |
| | * | |
| **THE JOHNS HOPKINS UNIVERSITY,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Brian Siatkowski ("Plaintiff") filed an Amended Complaint against his former employer, The Johns Hopkins University, ("JHU"), alleging unlawful retaliation and termination in violation of the Maryland False Claims Act, Md. Code. Ann., Gen. 8-101 *et seq.* and wrongful termination in violation of Maryland public policy. ECF 14. JHU filed a motion to dismiss the amended complaint for failure to state a claim, ECF 17.[1] Plaintiff filed an opposition, ECF 18, and JHU filed a reply, ECF 23. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, JHU's motion will be granted in part and denied in part.

I. **FACTUAL BACKGROUND**

The facts contained herein are derived from Plaintiff's Amended Complaint and assumed to be true for purposes of this motion. Between November, 2019 and September 30, 2024, JHU employed Plaintiff in its School of Education's "The Ideals Institute." ECF 14 ¶ 11. Plaintiff

---

[1] JHU filed an initial motion to dismiss the Complaint, ECF 10, that will be denied as moot because Plaintiff has since amended the complaint.

originally served as Director of Marketing and Strategic Partnerships. *Id.* In that role, Plaintiff received grant money from the State of Maryland ("Maryland Excels Grant") to promote "Maryland Excels," a childcare rating system and website developed by the Early Childhood Division of the Maryland State Department of Education (MSDOE). *Id.* ¶ 12. Plaintiff's role was to use the Maryland Excels Grant funds to raise awareness about Maryland Excels with families across Maryland. *Id.* ¶ 14.

In or about July 2022, the Director of The Ideals Institute, Chris Swanson, and another management-level employee, Jon Farley, asked for Plaintiff's assistance to use money from the Maryland Excels grant to purchase luxury suite tickets for Baltimore Orioles baseball games. *Id.* ¶ 15. Plaintiff refused, telling Swanson and Farley that their request was not aligned with the mission of the Maryland Excels Grant. *Id.* ¶ 16. Shortly after that exchange, Farley called Plaintiff after work hours and threatened him with "negative consequences" from his refusal, telling him that if he wanted to keep his job, he should "get in line." *Id.* ¶¶ 17–18.

After these incidents, Plaintiff investigated Swanson and Farley's purchase history from the Maryland Excels grant and discovered several expenses he believed to be inappropriate, including a payment to a business entity owned and operated by Swanson's sister, payments by Swanson relating to Halloween parties held at his home, and prior payments to purchase tickets, food, and alcohol at Orioles games for Swanson, Farley, and non-work-related friends and acquaintances. *Id.* ¶ 19. Understanding that his report would be anonymous, Plaintiff reported his findings through JHU's "Whistleblower Reporting Line" and its procedures. *Id.* ¶¶ 20–21.

Despite JHU's assurances of anonymity, Swanson, Farley, and Swanson's friend and Deputy Director, Tonya Satchell, learned that Plaintiff had reported Swanson and Farley's conduct. *Id.* ¶ 23. Shortly thereafter, Swanson "stripped Plaintiff of his responsibilities managing and moderating a very successful community-of-practice with state leaders" that he had held for

three years. *Id.* ¶ 25. Swanson and Farley resigned their positions in or about the beginning of 2023, and Satchell became Director of The Ideals Institute. *Id.* ¶¶ 26–27. As a result of Plaintiff's reporting of Swanson and Farley, Satchell then demoted Plaintiff from "Director of Marketing" to "Business Development Consultant," stripped him of his management responsibilities over his sole subordinate employee, included false and offensive information in Plaintiff's annual review, forbid Plaintiff from direct communications with his contacts at MSDOE, refused to allow Plaintiff to attend previously approved professional conferences, threatened Plaintiff with unwarranted discipline, and declined to meet with Plaintiff or participate in reviews of his work. *Id.* ¶¶ 29, 31. Plaintiff had also participated in drafting a separate grant from MSDOE, the Maryland Rebuilds Workforce Grant. *Id.* ¶ 29g. Plaintiff was the only JHU employee qualified to write the marketing section of the new grant. *Id.* Although JHU had told MSDOE that Plaintiff would work on the grant if JHU won it, Satchell excluded Plaintiff from working on the new grant he had helped obtain. *Id.* ¶ 29.

When the Maryland Excels Grant expired on September 30, 2024, JHU terminated Plaintiff's employment. *Id.* ¶ 33. This lawsuit ensued.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]" (quotation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if…[the] actual proof of those facts is improbable and…recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d

435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III. ANALYSIS

The two counts in the Amended Complaint will be evaluated separately.

#### A. Count One: MFCA

The MFCA provides that "[a] person may not take a retaliatory action against an employee, a contractor, or a grantee because" that person engaged in certain protected activities. Md. Code Ann., Gen. § 8-107(a). JHU argues that Plaintiff has not pleaded the required causal connection, in light of the time lapse between his whistleblower report and his eventual termination. While acknowledging that temporal proximity can be one factor used to evaluate causation, based on the facts alleged in this case, this Court is unpersuaded. Plaintiff has alleged an ongoing series of specific retaliatory actions commencing shortly after his whistleblower report and continuing throughout 2023 and 2024, amounting to a reduction in his assigned responsibilities and eventual confinement of his duties to a single grant, allowing for his termination once that grant expired. He specifically alleges a close personal connection between the individuals he reported and his new supervisor, Satchell. And although JHU correctly notes that Plaintiff did not allege the identity of the person formalizing his termination, he alleges that

in retaliation for his whistleblower reporting, Satchell ensured that all of his duties would end when the Maryland Excels Grant ended, easing his termination. Taken as true and in the light most favorable to Plaintiff, those facts meet the "low bar" applicable at the motion to dismiss stage and are sufficient to plead a plausible MCFA claim.

### B. Count Two: Wrongful Discharge

The elements of wrongful discharge are (1) a discharge that (2) violated a clear mandate of public policy, with (3) a nexus between the employee's conduct and the employer's termination decision. *King v. Marriott Inter. Inc.*, 160 Md. App. 689, 700 (2005). Recovery under a wrongful discharge theory is not available where statutory remedies exist. *See Chappell v. S. Md. Hosp., Inc.*, 578 A.2d 766, 773 (Md. 1990) (rejecting a wrongful discharge claim where the individual was able to "pursue a remedy under both the state and federal anti-discrimination statutes for his discharge from employment for apprising his employer of allegedly discriminatory employment practices"). Plaintiff enjoys such a remedy here, as evidenced by his MFCA claim. *See Wholey v. Sears Roebuck*, 370 Md. 38, 60 n.14 (2002) ("[W]hen the statute, which evidences the public policy, itself provides a remedy for wrongful discharge, then a further remedy, at common law, is unnecessary."). He cannot therefore use the MFCA as the "public policy" to support a common law cause of action.

Plaintiff has not otherwise identified any clear mandate of public policy entitling him to pursue relief. Although his amended complaint references his efforts to "report" and "prevent" criminal conduct, ECF 14 ¶ 52, the Maryland Supreme Court has explained that "[t]o qualify for the public policy exception to at-will employment, the employee must report the suspected criminal activity to the appropriate law enforcement or judicial official, not merely investigate the suspected wrong-doing and discuss that investigation with co-employees or supervisors." *Wholey*, 370 Md. at 61. Plaintiff does not allege that he reported Swanson or Farley to law

enforcement, only to the JHU Whistleblower Reporting Line. And he has not alleged that he himself had been asked to violate the law or fail to fulfill a legal right or duty.

For those reasons, Plaintiff has failed to state a plausible wrongful discharge claim and the count will be dismissed without prejudice.

### C. Punitive Damages

Finally, JHU asks this Court to strike Plaintiff's request for punitive damages, correctly noting that such a request is subject to a high standard of proof. ECF 17-1 at 11–12. However, because Plaintiff has stated a viable claim, this Court believes it is premature to address issues regarding his potentially available damages. Rule 12(b)(6) governs dismissal of claims, and Rule 12(f) provides a basis to strike "an insufficient defense" or "any redundant, immaterial, impertinent, or scandalous matter." Neither provides a basis for striking a theory of damages. JHU will, of course, be permitted to re-challenge Plaintiff's request for punitive damages at later stages of the litigation.

### IV. CONCLUSION

For the reasons set forth above, JHU's Motion to Dismiss, ECF 17, will be DENIED as to Count I and GRANTED without prejudice as to Count II. A separate Order follows.

Dated: August 7, 2025                                              /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge